David Donahue (DD 5808)
Nicholas Eisenman (NE 0213)
FROSS ZELNICK LEHRMAN & ZISSU, P.C.
866 United Nations Plaza
New York, New York 10017
(212) 813-5900 (phone)
(212) 813-5901 (fax)
*Attorneys for Plaintiff BMG Music d/b/a J Records*

UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BMG MUSIC d/b/a J RECORDS,<br><br>                    Plaintiff,<br><br>       v.<br><br>J7 RECORDS, INC.,<br><br>                Defendant. | Case No. 07 Civ. 6076 (MGC) |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

## TABLE OF CONTENTS

Table of Authorities .................................................................................................. iii

PRELIMINARY STATEMENT ................................................................................. 1

BACKGROUND ......................................................................................................... 2

ARGUMENT ............................................................................................................... 5

   I.  DEFENDANT IS SUBJECT TO PERSONAL JURISDICTION IN THIS COURT ........ 5

      A.  Legal Standard. ................................................................................................ 5

      B.  This Court's Exercise of Jurisdiction is Proper Under New York's Long-Arm
         Statute. ............................................................................................................ 6

         1.  Defendant Has Transacted Business in New York Under Section 302(a)(1) ... 6

         2.  This Court May Exercise Jurisdiction Over Defendant Under Section
            302(a)(3)(ii) .............................................................................................. 8

      C.  This Court's Exercise of Jurisdiction Over Defendant Would be Consistent with
         Due Process ..................................................................................................... 10

         1.  Plaintiff Had Made a Prima Facie Showing that Defendant Has Minimum
            Contacts with the Forum State ................................................................. 11

         2.  It Would be Reasonable for the Court to Exercise Jurisdiction over
            Defendant ................................................................................................. 12

      D.  Defendant's Self-Serving Declaration Cannot Overcome Plaintiff's Prima Facie
         Case for Jurisdiction Over Defendant ............................................................ 14

      E.  In the Alternative Plaintiff Should be Granted Leave to Conduct Jurisdictional
         Discovery ........................................................................................................ 16

  II.  DEFENDANT HAS FAILED TO MEET ITS HEAVY BURDEN OF PROVING
      THAT A TRANSFER TO LOUISIANA IS WARRANTED ................................. 17

CONCLUSION ......................................................................................................... 21

## TABLE OF AUTHORITIES

### FEDERAL CASES

*A. I. Trade Finance, Inc. v. Petra Bank*, 989 F.2d 76 (2d Cir. 1993) ............................ 5, 10, 15, 16

*APWU v. Potter*, 343 F.3d 619 (2d Cir. 2004)................................................................................. 16

*Aerotel, Ltd. v. Sprint Corp.*, 101 F. Supp. 2d 189 (S.D.N.Y. 2000)............................................ 19

*Agency Rent A Car System Inc. v. Grand Rent A Car Corp.*, 98 F.3d 25 (2d Cir. 1996) ............... 6

*Am. Eagle Outfitters, Inc. v. Tala Bros. Corp.*, 457 F. Supp. 2d 474 (S.D.N.Y. 2006) ................ 20

*Beattie & Osborn LLP v. Patriot Scientific Corp.*, 431 F. Supp. 2d 367 (S.D.N.Y. 2006) ................................................................................................................................ 17, 18, 20

*Cartier v. Oakley, Inc.*, No. 06 Civ. 5841, 2006 WL 3635321 (S.D.N.Y. Dec. 11, 2006) ....... 10

*Daventree Ltd. V. Republic of Azerbigian*, 349 F. Supp. 2d 736 (S.D.N.Y. 2004) ...................... 16

*Dux Interiors, Inc. v. Dyevich*, No. 06 Civ. 8145, 2007 WL 2789443 (S.D.N.Y. Sept. 26, 2007) ............................................................................................................................... 6-7

*GTFM, Inc. v. Fubutu Home & Educ. Media, Inc.*, No. 01 Civ. 6596, 2003 WL 22439791 (S.D.N.Y. Oct. 27, 2003) ........................................................................................................ 12

*Kernan v. Kurtz-Hasting, Inc.*, 175 F.3d 236 (2d Cir. 1999)................................... 9, 10, 11, 12

*Kiss My Face Corp. v. Bunting*, No. 02 Civ. 2645, 2003 WL 22244587 (S.D.N.Y. Sept. 30, 2003) ....................................................................................................................................... 18-19

*Mattel, Inc. v. Adventure Apparel*, No. 00 Civ. 4085, 2001 WL 286728 (S.D.N.Y. Mar. 22, 2001) ...................................................................................................................................... 7, 8, 12

*PDK Labs, Inc. v. Friedlander*, 103 F.3d 1105 (2d Cir. 1997)................................................... 5

*Phillip Morris USA Inc. v. Veles Ltd.*, No. 06 CV 2988, 2007 WL 725412 (S.D.N.Y. Mar. 12, 2007) ........................................................................................................................................ 7, 12

*Pilates, Inc. v. Pilates Institute, Inc.*, 891 F. Supp. 175 (S.D.N.Y. 1995) ........................ 7, 15, 18

*Savage Universal Corp. v. Grazier Construction, Inc.*, No. 04 Civ. 1089, 2004 WL 1824102 (S.D.N.Y. Aug. 13, 2004) ..................................................................................................... 8, 9, 13

*Schnabel v. Ramsey Quantitative Systems, Inc.*, 322 F. Supp. 2d 505 (S.D.N.Y. 2004) .............. 18

*Sunward Electronics, Inc. v. McDonald*, 362 F.3d 17 (2d Cir. 2004) .............................................. 5

*In re Warrick*, 70 F.3d 736 (2d Cir. 1995) ................................................................................... 18

*Whitaker v. American Telecasting, Inc.*, 261 F.3d 196 (2d Cir. 2001) ..................................... 5

## FEDERAL STATUTES

28 U.S.C. § 1404(a) ...................................................................................................................... 15

## STATE CASES

*Kreutter v. McFadden Oil Corp.*, 71 N.Y.2d 460 (1988) .............................................................. 7

*La-Marca v. Pak-MorMfg. Co.*, 95 N.Y.2d 210 (N.Y. 2000) ................................................. 8, 10

## STATE STATUTES

N.Y. C.P.L.R. § 302 (McKinney 1990) ......................................................................................... 6

## PRELIMINARY STATEMENT

Plaintiff BMG Music d/b/a J Records ("Plaintiff" or "J Records") commenced this action to prevent Defendant J7 Records, Inc. ("Defendant" or "J7 Records") from continuing to infringe Plaintiff's well-known J RECORDS trademark by offering musical sound recordings and other music-related goods and services under the confusingly similar J7 RECORDS mark in direct competition with J Records. Plaintiff's allegations—in its Complaint and in its declarations attaching evidence that Plaintiff has compiled without the aid of discovery—set forth a prima facie showing that Defendant has purposefully targeted the New York market with its infringing goods and has offered and is continuing to offer its infringing goods to New York consumers. Nothing more is required of Plaintiff to establish this Court's jurisdiction over Defendant at the pleadings stage.

Nevertheless, despite publicly holding itself out as a national record label with a national record release, Defendant seeks to avoid being held accountable for its actions before this Court by claiming that its activity under the J7 RECORDS mark is minimal and, in any event, confined within the borders of Louisiana. This about-face by Defendant is nothing more than a self-serving attempt to forum shop. Indeed, Defendant's entire motion rests on the declaration of Defendant's President, Ms. Tireka Cobb, which includes averments that are directly contradicted not only by Defendant's public statements and conduct, but also by sworn statements made by Ms. Cobb in an affidavit she submitted earlier this month to the Trademark Trial and Appeal Board. At this stage of the proceedings, however, Plaintiff's allegations, not Ms. Cobb's suspect averments, must be taken as true. As such, Ms Cobb's declaration—even if it were credible—cannot overcome Plaintiff's prima facie case for this Court's jurisdiction over Defendant. Accordingly, Defendant's motion fails.

Defendant's request in the alternative for a transfer fares no better. Left out of its Notice of Motion and buried in its Memorandum of Law, the request fails to set forth the applicable legal standard for transfer requests under 28 U.S.C. § 1404(a), much less argue facts that meet the standard. As such, Defendant has utterly failed to meet its heavy burden of proving that a transfer is warranted; particularly not where, as here, the Plaintiff has chosen its home state as the forum for its claims under New York State and federal law.

**BACKGROUND**

### A.    Plaintiff's J Records Music Label

Plaintiff is a general partnership organized and existing under the laws of New York with a principal place of business at 550 Madison Avenue, 15th Floor, New York, New York 10022. (Compl. ¶ 4.) It launched the J Records label to great fanfare in 2000 under the aegis of legendary music executive and producer Clive Davis. (*Id.* ¶ 10.) Since then, Plaintiff has used its federally registered J and J RECORDS trademarks and J Records trade name (collectively the "J RECORDS Mark") in connection with the production, distribution and promotion of popular recordings of some of the most successful recording artists in the world. (*Id.* ¶ 1.)

### B.    Defendant's Infringing Activity

Long after Plaintiff's J RECORDS Mark achieved prominence, Defendant adopted and began using a confusingly similar, nearly identical mark—J7 RECORDS—as the name of a music label to compete directly with J Records. (*Id.* ¶ 2.) Although its headquarters are located in Louisiana, J7 Records' infringing activities have been national in character and have been purposefully directed to the New York market. (*Id.* ¶¶ 7, 18-22).

Plaintiff alleges in its Complaint that Defendant

regularly does and solicits business within the State of New York; has engaged in conduct in this judicial district, including the promotion, distribution and/or sale

of musical sound recordings and audio-visual recordings featuring music under the J7 RECORDS mark, causing injury within this district and within the State; has derived and/or intends to derive substantial revenues from such conduct within this district and State; and has and should have reasonably expected such conduct to have consequences within this district and within the State.

(Compl. ¶ 7.) These allegations are supported by evidence Plaintiff has compiled from the public record, without the aid of discovery.

Specifically, until recently, Defendant promoted and prominently displayed its infringing J7 RECORDS mark on its company website at www.j7records.com (the "J7 Records Website).[1] (*Id.* Ex. 5). The J7 Records Website advertised Defendant's "Spring 2007" national release of an album entitled *Trax World: Vol. 1* (the "Album") by the performer known as "Lady Royale." (*Id.* ¶¶ 21-22, Ex. 5.) The J7 Records Website also advertised a "national tour" by Lady Royale to promote the Album and boasted that J7 Records had achieved radio play for Lady Royale's song entitled "Do You Like"—the first single from the Album ("the "Single")—in over 75 United States cities. (*Id.*)

Moreover, Plaintiff recently learned that Defendant's goods under its infringing J7 RECORDS mark are available for purchase by New York consumers via well-known commercial websites such as www.amazon.com ("Amazon.com"). Indeed, Philip Karnofsky, a paralegal employed by Plaintiff's counsel, was able to purchase a digital copy of the Single from Amazon.com from his office in New York City. (Karnofsky Decl. ¶ 9, Ex. H.)

J7 Records also promotes its goods and services under the infringing J7 RECORDS mark via a webpage devoted to Lady Royale and the Album on the popular social networking website at www.myspace.com (Defendant's "MySpace Page"). (*Id.* ¶¶ 7-8, Exs. E-F.) Defendant's

---

[1] As of the filing date of this brief, Defendant's J7 Records Website displays only the text "New Site Coming Soon." (*See* Declaration of Philip Karnofsky dated April 2, 2008 ("Karnofsky Decl.") ¶ 5, Ex. C.)

MySpace Page prominently features Defendant's infringing J7 RECORDS mark, contains a link to the J7 Records Website, and provides Defendant's contact information. *(Id.)* Like Amazon.com, Defendant's MySpace Page permits consumers, including consumers in New York State, to purchase digital copies of the Single; indeed, Mr. Karnofsky also was able to purchase a digital copy of the Single from the MySpace Page from his office in New York City. *(Id.)*

Defendant's MySpace Page specifically targets the New York market by inviting consumers from New York to "demand" that Lady Royale visit the New York area. *(Id.* ¶ 8, Exs. F-G.) The MySpace page indicates that at least one person in the "New York metro area" has made such a demand and further shows that at least one person from New York has signed its "guest book." *(Id.* ¶ 8, Exs. F-G.)

J7 Records also digitally distributes the Single and a related music video (the "Video") for streaming and/or downloading on the Internet via websites that are available to New York consumers. Such websites include www.mp3.com, www.youtube.com, video.google.com, and www.ifilm.com, among many others. (Compl. ¶ 21.) As a result of Defendant's promotional efforts, its J7 Records label has been featured on several websites that may be viewed by consumers in New York, including www.top-40charts.com, www.rapsearch.com, and www.mozes.com. (Karnofsky Decl. ¶ 6, Ex. D.)

J Records first learned of Defendant's infringing use of the J7 RECORDS mark when it received notice from its trademark watch service that on January 29, 2007, Defendant had filed U.S. Trademark Application Serial Number 77/093,107 seeking to register the mark J7 RECORDS. (Compl. ¶ 23.) Defendant's application is based on its purported use of the mark in commerce in connection with "[m]usical sound recordings," "[m]usical video recordings" and

other related goods. (*Id.*) Shortly after learning about Defendant's application, to protect the J

RECORDS Mark and the goodwill it represents, and to prevent confusion among consumers, J

Records' counsel requested that Defendant stop using the J7 RECORDS Mark. (*Id.*) J7 Records

refused, leading to this action. (*Id.*)

## ARGUMENT

## I.    DEFENDANT IS SUBJECT TO PERSONAL JURISDICTION IN THIS COURT.

### A. Legal Standard

On a motion to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil

Procedure 12(b)(2), Plaintiff bears the burden of proving that this Court has personal jurisdiction

over Defendant. *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 208 (2d Cir. 2001). Given that

there has been no evidentiary hearing or discovery, however, Plaintiff "need only allege facts

constituting a prima facie showing of personal jurisdiction." *See, e.g., PDK Labs, Inc. v.

Friedlander*, 103 F.3d 1105, 1108 (2d Cir. 1997) (citation omitted). Allegations submitted solely

through competing pleadings or affidavits must be "construed in the light most favorable to

[P]laintiff and doubts are resolved in [P]laintiff's favor, notwithstanding a controverting

presentation by the moving party." *A.I. Trade Fin., Inc. v. Petra Bank,* 989 F.2d 76, 79-80 (2d

Cir. 1993).

"In a federal question case where a defendant resides outside the forum state, a federal

court applies the forum state's personal jurisdiction rules 'if the federal statute does not

specifically provide for national service of process.'" *PDK Labs, Inc.*, 103 F.3d at 1108 (citation

omitted). "Because the Lanham Act does not provide for national service of process, the New

York [S]tate long-arm statute governs [the personal jurisdiction] inquiry." *Sunward Elecs., Inc.

v. McDonald*, 362 F.3d 17, 22 (2d Cir. 2004).

As discussed below, Plaintiff's allegations in its Complaint and declarations, taken as true for purposes of Defendant's motion, easily establish a prima facie case for this Court's exercise of personal jurisdiction over Defendant.

### B.    This Court's Exercise of Jurisdiction is Proper Under New York's Long-Arm Statute.

New York State's long-arm statute is found in C.P.L.R. Section 302, which sets forth several independent bases for the exercise of personal jurisdiction over a non-domiciliary of New York State. N.Y.C.P.L.R. § 302(a)(1)-(4). Here, C.P.L.R. Sections 302(a)(1) and 302(a)(3)(ii) each provide an independent basis for the Court's exercise of jurisdiction over Defendant. The relevant sections provide as follows:

(a) a Court may exercise personal jurisdiction over any non-domiciliary... who

...

(1) transacts any business within the state or contracts anywhere to supply goods or services in the state; or ...

(3) commits a tortious act without the state causing injury to person or property within the state ... if he

...

(ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce.

N.Y. C.P.L.R. § 302 (McKinney 1990).

### 1.    Defendant Has Transacted Business in New York Under Section 302(a)(1).

To establish a prima facie case for personal jurisdiction over Defendant under Section 302(a)(1), Plaintiff must allege that the Defendant transacted business in New York and that its claims against Defendant arise out of such business activity. *See Agency Rent A Car Sys. Inc. v. Grand Rent A Car Corp.*, 98 F.3d 25, 29 (2d Cir.1996). "New York courts define 'transact[ing] business' as purposeful activity—some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and

protections of its laws." *Dux Interiors, Inc. v. Dyevich*, No. 06 Civ. 8145, 2007 WL 2789443, at *3 (S.D.N.Y. Sept. 26, 2007) (citations omitted).

As the New York Court of Appeals has explained "one transaction in New York is sufficient to invoke jurisdiction [under Section 302(a)(i)], even though the defendant never enters New York, so long as the defendant's activities here were purposeful and there is a substantial relationship between the transaction and the claim asserted." *Kreutter v. McFadden Oil Corp.*, 71 N.Y.2d 460, 467 (1988); *see also Pilates, Inc. v. Pilates Inst., Inc.*, 891 F. Supp. 175, 179 (S.D.N.Y. 1995) ("CPLR 302(a)(1) is a 'single act' statute, meaning that proof that one transaction occurred in New York is sufficient to invoke jurisdiction....").

In this case, Plaintiff has alleged that J7 Records has engaged in such purposeful business activity by (i) selling products under Defendant's infringing J7 RECORDS mark, including the Single, to New York consumers (Compl. ¶ 7; Karnofsky Decl. ¶¶ 7-9, Exs. E, H), (ii) inviting New York consumers to "demand" that Lady Royale visit New York to perform her songs offered under Defendants' infringing J7 RECORDS mark (Karnofsky Decl. ¶¶ 7-8, Exs. F, G), (iii) promoting its goods and services under the infringing J7 RECORDS mark on websites available to New York residents (Compl. ¶¶ 21-22, Exs. 4,5; Karnofsky Decl. ¶¶ 3-9), and (iv) making the Single and the Video available for download and streaming to New York consumers via various publicly available websites (Compl. ¶ 21, Exh 4; Karnofsky Decl. ¶¶ 6-9, Exs. D-G). These allegations are more than sufficient to satisfy the "transacted business" requirement of Section 302(a)(1). *See, e.g.*, *Phillip Morris USA Inc. v. Veles Ltd.*, No. 06 CV 2988, 2007 WL 725412, at *4-5 (S.D.N.Y. Mar. 12, 2007) (exercising jurisdiction under Section 302 (a)(1) based on single sale of infringing product to Plaintiff's investigator); *Mattel, Inc. v. Adventure Apparel*, No. 00 Civ. 4085, 2001 WL 286728, at *3-4 (S.D.N.Y. Mar. 22, 2001) (same). Moreover,

"[Plaintiff's] causes of action for trademark dilution and infringement and for unfair competition arise from this transaction of business because it is precisely the bona fides of these products ... that [Plaintiff] challenges." *Mattel, Inc.*, 2001 WL 286728, at *4 (citations and alterations omitted).

### 2. This Court Also May Exercise Jurisdiction Over Defendant Under Section 302(a)(3)(ii).

To establish a prima facie case for personal jurisdiction under Section 302(a)(3)(ii), Plaintiff must allege the following: (1) Defendant committed a tortious act outside New York; (2) Plaintiff's cause of action arises out of such act; (3) Plaintiff suffered harm in New York; (4) Defendant should have reasonably expected its actions to have consequences in New York; and (5) Defendant derives substantial revenue from interstate commerce. *LaMarca v. Pak-Mor Mfg. Co.*, 95 N.Y.2d 210, 735 N.E.2d 883, 889 (N.Y. 2000) (finding that trial court had jurisdiction over defendant under 302(a)(3)(ii)).

In its Memorandum of Law, Defendant concedes that Plaintiff has established a prima facie case with respect to the first three factors (*see* Dkt. No. 9 at 7), and correctly so: it is indisputable that Defendant has engaged in tortious activity in another state, that Plaintiff's causes of action arise from such activity, and that Plaintiff is suffering harm—in the form of damage to the goodwill associated with its well-known J RECORDS trademark—in New York, where its headquarters are located. *See, e.g., Savage Universal Corp. v. Grazier Construction, Inc.*, No. 04 Civ. 1089, 2004 WL 1824102, at *9 (S.D.N.Y. Aug. 13, 2004) (defendant's "infringement caused injury within New York, as the 'first effects' of trademark infringement... are typically felt where the trademark owner resides and conducts business and can include injury in the form of damage to goodwill...."). As discussed below, Plaintiff's allegations satisfy the remaining Section 302(a)(3)(ii) factors as well.

The fourth Section 302(a)(3)(ii) factor is satisfied where the defendant has made "a discernable effort ... to directly or indirectly serve the New York market." *Kernan v. Kurz-Hasting, Inc.* 175 F.3d 236, 241 (2d Cir. 1999). In this case, Defendant's J7 Records Website promotes the *national* release of Album and Single under the J7 RECORDS mark, and a *national* tour to promote sales of the Album and Single under the mark.[2] (Compl. ¶¶ 21-22, Ex. 5.) Defendant also is distributing the Single and the Video to consumers across the nation via various third-party websites (Compl. ¶¶ 21, Ex. 4), and offering the Single for sale on well-known commercial websites, such as Amazon.com and MySpace.com (Karnofsky Decl. ¶¶ 7-9). Moreover, Defendant is specifically targeting the New York market by inviting consumers from New York to "demand" that Lady Royale visit the New York. (Karnofsky Decl. ¶¶ 7-8.) Plaintiff has alleged that Defendant engaged in the aforementioned activities with the specific purpose of "trad[ing] off of the fame of Clive Davis and his J Records label." (Compl. ¶ 18.) Under such circumstances, there is no question that Defendant should reasonably expect that its actions would have consequences in New York. *See Savage Universal Corp.*, 2004 WL 1824102, at *9. Accordingly, Plaintiff's allegations satisfy the fourth factor.

Plaintiff's allegations also satisfy the fifth Section 302(a)(3)(ii) factor, which requires allegations sufficient to show that Defendant derives substantial revenue from interstate commerce. Plaintiff has alleged that Defendant "has derived and/or intends to derive substantial revenues from [its infringing] conduct within this district and State" (Compl. ¶ 7), and that Defendant is offering the Single for sale throughout the United States, including in New York,

---

[2] It would strain credulity for Defendant to argue that although it is engaging in a national release of Lady Royale's rap and R&B Album, it has no intention of targeting the New York market, which is one of the largest markets for music of that type.

via commercial websites such as Amazon.com and MySpace.com.[3]  (Karnofsky Decl. ¶¶ 7-9.)

Accepted as true for purposes of this motion, *see, e.g.*, *A.I. Trade Fin., Inc. v. Petra Bank*, 989

F.2d 76, 79-80 (2d Cir. 1993), Plaintiff's allegations easily make a prima facie showing that

Defendant derives substantial revenue from interstate commerce.  In essence, the fifth factor "is

designed to narrow the long-arm reach to preclude the exercise of jurisdiction over

nondomiciliaries who might cause direct, foreseeable injury within the State but whose business

operations are of a local character." *LaMarca v. Pak-MorMfg. Co.*, 95 N.Y.2d 210, 735 N.E.2d

883, 889 (N.Y. 2000) (internal citations and quotations omitted).  Here, Plaintiff has alleged, and

the publicly available evidence submitted by Plaintiff—which includes Defendant's promotion

of a nationwide album release, a nationwide promotional tour, and nationwide distribution and

sales of Lady Royale's Single and Video—shows that Defendant's infringing activity is of a

national character.

     C.     **This Court's Exercise of Jurisdiction Over Defendant Would be Consistent with Constitutional Standards of Due Process.**

"Ordinarily ... if jurisdiction is proper under the CPLR, due process will be satisfied

because CPLR § 302 does not reach as far as the Constitution permits." *Cartier v. Oakley, Inc.*,

No. 06 Civ. 5841, 2006 WL 3635321, at *4 (S.D.N.Y. Dec. 11, 2006) (citation omitted).

Nevertheless, Plaintiff will briefly address the two parts of the federal due process standard—the

"minimum contacts" inquiry and the "reasonableness" inquiry—below.

---

[3] Defendant cites *Ingraham v. Carroll*, 90 N.Y.2d 592, 665 N.Y.S.2d 10, N.E.2d 1293 (1997), a case in which the court found a physician's private practice to be "local in nature."  That case is inapposite here, given that Defendant is a national record company engaged in a nationwide release of an album.

### 1. *Plaintiff Has Made a Prima Facie Showing that Defendant Has Minimum Contacts with the Forum State.*

"To establish the minimum contacts necessary to justify 'specific' jurisdiction, the plaintiff first must show that his claim arises out of or relates to defendant's contacts with the forum state. The plaintiff must also show that the defendant 'purposefully availed' [itself] of the privilege of doing business in the forum state and that the defendant could foresee being 'haled into court' there." *Kernan v. Kurz-Hastings, Inc.*, 175 F.3d 236, 242-43 (2d Cir. 1999) (citations omitted).

Plaintiff has alleged that Defendant "regularly does and solicits business within the State of New York; has engaged in conduct in this judicial district, including the promotion, distribution and/or sale of musical sound recordings and audio-visual recordings featuring music under the J7 RECORDS mark ... and has derived and/or intends to derive substantial revenues from such conduct within this district and State." (Compl. ¶ 7.) Plaintiff further has alleged that Defendant is engaging in such activities "in an attempt to trade off of the fame of Clive Davis and his J Records label" (*id.* ¶ 18), and causing harm to Plaintiff within New York State (*id.* ¶ 7).

In support of these allegations, Plaintiff has shown that J Records has sold copies of the Single under the infringing J7 RECORDS mark to at least one consumer in New York State (Karnofsky Decl. ¶¶ 7, 9, Exs. E, H), has solicited New York State consumers to "demand" that Lady Royale come to New York State to perform under Defendant's infringing mark (*id.* ¶¶ 5-6, Exs. B, D), and has promoted goods under Defendant's infringing mark on websites—including Defendant's J7 Records Website, Defendant's MySpace Page, and various third-party websites—that may be viewed by New York State residents. (Compl. ¶¶ 21-22; Karnofsky Decl. ¶¶ 3-9, Exs. A-H.)

Taken as true for purposes of this motion, the above allegations are more than sufficient to establish a prima facie case of Defendant's "minimum contacts" with New York State for purposes of specific jurisdiction. *See, e.g., GTFM, Inc. v. Fubutu Home & Educ. Media, Inc.*, No. 01 Civ. 6595, 2003 WL 22439791, at *4 (S.D.N.Y. Oct. 27, 2003) ("By offering to sell their materials to New York customers, Defendants 'purposefully avail[ed] [themselves] of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.' Because those offers to sell in New York relate precisely to a central issue in this lawsuit[,] whether [defendant's] mark infringes upon [plaintiff's] trademark[,] Defendants' contacts are sufficient under the theory of 'specific jurisdiction.'") (citations omitted); *see also Phillip Morris USA Inc. v. Veles Ltd.*, No. 06 CV 2988, 2007 WL 725412, at *4-5 (S.D.N.Y. Mar. 12, 2007) (finding minimum contacts satisfied where defendant's only sale of infringing product in forum state was to plaintiff's investigator); *Mattel, Inc. v. Adventure Apparel*, No. 00 Civ. 4085, 2001 WL 286728, at *3-4 (S.D.N.Y. Mar. 22, 2001) (same).

### 2.    *It would be Reasonable for the Court to Exercise Jurisdiction over Defendant.*

In undertaking the reasonableness analysis, the Supreme Court has identified the following factors: "(a) the burden that the exercise of jurisdiction will impose on the defendant; (b) the interests of the forum state in adjudicating the case; (c) the plaintiff's interest in obtaining convenient and effective relief; (d) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (e) the shared interest of the states in furthering social substantive policies." *Kernan*, 175 F.3d at 244.

Defendant has argued that defendant "is a tiny company that cannot afford to conduct a litigation in New York." (Cobb Decl. ¶ 25.) But it has not offered any evidence to support this claim, which is belied by its hiring a large, multinational firm to represent it in this District.

Moreover, Defendant has failed to explain why it would have sufficient resources to litigate in Louisiana, but not to litigate here. *See Savage*, 2004 WL 1824102, at *11 ("[T]he statements that [defendant] has offered ..., if credited, would present a similar barrier to litigation even in the federal courts in Oregon, where [defendant] would clearly have no claim for lack of personal jurisdiction. The generalized inconvenience of litigating in a foreign forum is typically not sufficient to establish that the exercise of jurisdiction is constitutionally unreasonable."). Defendant, which has "obvious familiarity with internet communication" as evidenced by its successful promotion of its record label through a wide variety of internet outlets, simply has failed "to present any evidence to demonstrate that, in this modern age ... litigation in New York would present so great an inconvenience as to constitute a deprivation of due process." *Id.*

The remaining factors all favor the Court's exercise of jurisdiction over Defendant: Plaintiff, a New York company, is asserting, *inter alia*, claims under New York State law, and New York clearly has a strong interest in enforcing state law and providing a forum where New York companies may seek redress (Compl. ¶¶ 3, 39-50); litigating in Louisiana would be unduly burdensome for Plaintiff (*See* Declaration of Julie Swidler dated March 11, 2008 ("Swidler Decl.") ¶¶ 3-6); New York provides an efficient jurisdiction to resolve the controversy, because all of Plaintiff's witnesses and relevant documents are located here (*id.* ¶¶ 4-5) and the bulk of the remaining evidence concerns internet website printouts, which are accessible anywhere to parties with internet access (Compl. ¶¶ 21-22; Karnofsky Decl. ¶¶ 3-9, Exs. A-H); and finally, "litigating this case in New York presents no conflict with the sovereignty of [Louisiana], because it primarily concerns the Lanham Act, a federal statute" and related claims arising under New York State law. *See Savage*, 2004 WL 1824192, at *11.

D.    **Defendant's Self-Serving Declaration Cannot Overcome Plaintiff's Prima Facie Case for Jurisdiction Over Defendant.**

In support of its Motion to Dismiss, Defendant submitted the Declaration of Tireka Cobb, President of J7 Records. Ms. Cobb's declaration cannot overcome Plaintiff's prima facie case for this Court's exercise of jurisdiction over Defendant.

Ms. Cobb offers only conclusory and self-serving statements that are not supported by any documentary exhibits and, in many cases, are directly contradicted by Defendant's own public statements or by the evidence that Plaintiff has compiled from publicly available sources without the aid of discovery. For example,

•    while Ms. Cobb claims that Defendant only does business in Louisiana (Cobb Decl. ¶¶ 11, 14), Defendant's website promotes a national album release and national promotional concert tour under the J7 RECORDS mark and boasts radio play of the song "Do You Like" in 75 cities across the United States (Compl. ¶¶ 21-22, Exs. 4-5);

•    while Ms. Cobb claims that Defendant's "target audiences have all been in and around Louisiana" (Cobb Decl. ¶ 22), Defendant's MySpace page invites New York residents to demand that Lady Royale come to New York (Karnofsky Decl. ¶¶ 7-8 Exs. E-G);

•    while Ms. Cobb claims Defendant has not offered or sold any product, in Louisiana or elsewhere, and derives no revenue from interstate commerce (Cobb Decl. ¶¶ 6, 8, 12), a paralegal employed by Plaintiff's counsel was able to purchase digital copies of the Single under the J7 Records label from two commercial websites while in his office in New York (Karnofsky Decl. ¶¶ 7, 9, Exs. E, H).

Even more disturbing than the inconsistencies between Ms. Cobb's declaration and Defendant's public statements and conduct are the inconsistencies between Ms. Cobb's sworn statements in this action and in another action between the parties pending before the Trademark

{F0235662.10 }

- 14 -

Trial and Appeal Board (the "TTAB") of the United States Patent and Trademark Office ("USPTO"). In support of Defendant's motion to set aside the TTAB's notice of default in opposition proceedings Plaintiff commenced against Defendant's application to register the J7 RECORDS mark, Ms. Cobb submitted an "Affidavit of Verification" in which she averred to purported conduct of Defendant that *directly contradicts* her sworn statements in this action. (*Compare* Cobb Decl. ¶ 6 ("J7 has not released any products to the public. This means that J7 does not sell any records, CDs, cassettes or other materials."), ¶ 12 ("J7 has not manufactured, distributed or sold any products; musical albums or otherwise."), and ¶ 14 ("All of J7's use of the mark 'J7 Records' has occurred within the State of Louisiana."), *with* Declaration of David Donahue dated April 2, 2008 ("Donahue Decl.") ¶5, Ex. B at ¶ 3 ("CD's [sic] from [the 'Love Call' CD by R. J. Thomas] were sold at a church in Florida, and the J7 RECORDS mark was mentioned during, before and when soliciting a CD sale.").)

Ms. Cobb's apparent willingness to change her sworn statements to suit whatever motion Defendant seeks to support at any given time is troubling to say the least. But at this stage of the litigation, the Court need not consider whether Ms. Cobb's statements in her declaration are inaccurate or misleading; because Defendant's motion is to be "addressed on affidavits, all allegations are construed in the light most favorable to [P]laintiff and doubts are resolved in [P]laintiff's favor, *notwithstanding a controverting presentation by the moving party.*" *A.I. Trade Fin., Inc. v. Petra Bank*, 989 F.2d 76, 79-80 (2d Cir. 1993) (emphasis added); *see also Pilates, Inc. v. Pilates Inst., Inc.*, 891 F. Supp. 175, 178 (S.D.N.Y. 1995) (evidence on a Rule 12(b)(2) motion decided on pleadings and affidavits must be viewed in plaintiff's favor notwithstanding "contrary allegations that place in dispute the factual basis of plaintiff's prima facie case.").

E.    **In the Alternative, Plaintiff Should be Granted Leave to Conduct Jurisdictional Discovery.**

As set forth above, Plaintiff's allegations and evidence have sufficiently established a prima facie case of personal jurisdiction, and Ms. Cobb's self-serving declaration cannot overcome this prima facie case. *See, A.I. Trade Fin.,* 989 F.2d at 79-80 ("doubts are resolved in [P]laintiff's favor, notwithstanding a controverting presentation by the moving party.")

To the extent, however, that the Court is inclined to consider Ms. Cobb's declaration as a basis for finding that the Court lacks jurisdiction over Defendant, Plaintiff respectfully submits that it "should be provided with 'ample opportunity to secure and present evidence relevant to the existence of jurisdiction' through jurisdictional discovery." *Daventree Ltd. v. Republic of Azerbijan,* 349 F. Supp. 2d 736, 761 (S.D.N.Y. 2004) (quoting *APWU, AFL CIO v. Potter,* 343 F.3d 619, 627 (2d Cir. 2004)). Indeed, given the inconsistencies between Ms. Cobb's declaration and the evidence obtained by Plaintiff to date (*see* section I.D. *supra*), the interests of justice require that Plaintiff be given the opportunity to test the accuracy of Ms. Cobb's statements through jurisdictional discovery. Such jurisdictional discovery would include a deposition of Ms. Cobb and/or the performer known as Lady Royale, as well as requests for production of documents and things concerning the extent to which Defendant's activity under the J7 RECORDS mark extends beyond Louisiana's borders or is intended to reach the New York market.[4]

---

[4] In the interests of promoting judicial economy, Plaintiff requested Defendant's consent to take jurisdictional discovery before the hearing date on this motion so that the Court could consider the issues on a full record. (*See* Donahue Decl. ¶ 3.) Defendant denied consent. (*Id.*) Apparently, Defendant wants the best of both worlds—it invites the Court to consider evidence beyond the pleadings (i.e., the Cobb Declaration), but seeks to prevent Plaintiff from testing the veracity of such evidence.

## II. DEFENDANT HAS FAILED TO MEET ITS HEAVY BURDEN OF PROVING THAT A TRANSFER TO LOUISIANA IS WARRANTED.

Although a district court may transfer a civil action to another federal district court "[f]or the convenience of parties and witnesses, in the interest of justice," 28 U.S.C. § 1404(a), the burden is on the moving party to "make a *clear-cut showing* that transfer is in the best interests of the litigation." *Beatie & Osborn LLP v. Patriot Scientific Corp.*, 431 F. Supp. 2d 367, 394 (S.D.N.Y. 2006) (citations omitted) (emphasis added).

Here, Defendant has not even attempted to meet its burden. Its Notice of Motion does not contain any reference to a transfer and does not request any such relief. (*See* Dkt. No. 7.) And, other than in a single, conclusory paragraph in its Preliminary Statement, Defendant failed to address the subject of a transfer to Louisiana in its Memorandum of Law. (*See* Dkt. No. 9.) Because Defendant has failed to set forth evidence and argument in support of a transfer, the Court need not consider the issue further. Nevertheless, given that the Court inquired about Plaintiff's position on transfer at the November 29, 2007 status conference in this action, Plaintiff will address the legal standards below.

Courts in the Second Circuit consider the following factors in determining whether transfer to another district court is appropriate: (1) the weight accorded to Plaintiff's choice of forum; (2) the convenience of witnesses; (3) the convenience of the parties; (4) the location of relevant documents and relative ease of access to sources of proof; (5) the locus of the operative facts; (6) the availability of process to compel the attendance of unwilling witnesses; (7) the relative means of the parties; (8) the forum's familiarity with the governing law; and (9) trial efficiency and the interests of justice, based on the totality of circumstances. *Beatie & Osborn,* 431 F. Supp. 2d at 396.

{F0235662.10 }

*(1) Weight accorded the plaintiff's choice of forum:*  Plaintiff's choice of forum is entitled to "substantial consideration" and "weigh[s] heavily against transfer." *In re Warrick*, 70 F.3d 736, 741 (2d Cir. 1995) (citation omitted).  This is particularly true, where, as here, Plaintiff is a domiciliary of New York City, the location of its chosen forum. *See, e.g., Schnabel v. Ramsey Quantitative Sys., Inc.*, 322 F. Supp. 2d 505, 518-19 (S.D.N.Y. 2004).  Accordingly, this factor weighs strongly against transferring the case to Louisiana.

*(2) Convenience of witnesses:*  "A party moving to transfer on the ground that witnesses will be inconvenienced is obliged to 'name the witnesses who will be appearing and describe their testimony so that the court may measure the inconvenience caused by locating a lawsuit in a particular forum.'" *Beatie & Osborn LLP*, 431 F. Supp. 2d at 396 (citation omitted).  Defendant has not identified any potential witnesses, much less explained how such witnesses would be inconvenienced if the trial were conducted in New York, which, by itself, provides grounds for denying transfer. *See, e.g., Pilates, Inc. v. Pilates, Inst., Inc.*, 891 F.Supp. 175, 183 (S.D.N.Y. 1995) (holding that a party's motion to transfer should be denied where party fails to provide a detailed list documenting "witnesses on which the party intends to rely in the transferee district, along with a general statement of the topics of each witness' testimony").  On the other hand, all of Plaintiff's witnesses work in New York City. (*See* Swidler Decl. ¶ 3.)  Accordingly, this factor weighs against transfer.

*(3) Convenience of the parties:*  New York is a convenient forum for Plaintiff, given that its headquarters, witnesses and counsel are located here. (*Id.* ¶¶ 1-4.)  While New York may be less convenient than Louisiana for Defendant, "[t]he convenience of the parties does not favor transfer when it would merely shift any inconvenience from defendant to plaintiff." *Kiss My*

*Face Corp. v. Bunting*, No. 02 Civ. 2645, 2003 WL 22244587, at \*3 (S.D.N.Y. Sept. 30, 2003) (citation omitted). Accordingly, this factor does not weigh in favor of transfer.

*(4) Location of relevant documents and relative ease of access to sources of proof:* To prove that this factor weighs in favor of transfer, the moving party must make "a detailed showing as to the burden Defendant would incur absent transfer." *Id.* at \*2. Again, Defendant has failed to meet its burden. In any event, even if Defendant had produced evidence showing that its relevant documents are located in Louisiana, Plaintiff's relevant documents are located in New York. (*See* Swidler Decl. ¶ 4.) Moreover, much of the relevant evidence gathered to date has come from internet sources. (Compl. ¶¶ 21-22; Karnofsky Decl. ¶¶ 3-9, Exs. A-H.) As such, this factor does not weigh in favor of transfer. *Cf. Aerotel, Ltd. v. Sprint Corp.*, 100 F. Supp. 2d 189, 197 (S.D.N.Y. 2000) ("The location of documents factor is neutral '[i]n today's era of photocopying, fax machines and Federal Express.'") (citation omitted).

*(5) Locus of the operative facts:* "In actions alleging trademark infringement or unfair competition, courts in this district have held the locus of operative facts to be in the initially chosen forum if acts of infringement, dilution, or unfair competition occur in that forum." *Kiss My Face Corp.*, 2003 WL 22244587, at \*3. Given that Defendant's goods—namely, digital copies of Lady Royale's "Do You Like" single—have been distributed, made available for streaming and download, and sold in New York, the locus of operative facts is in this District, which weighs against transfer. *Id.*

*(6) Availability of process to compel the attendance of unwilling witnesses:* "Defendant has proffered no evidence that potential party or non-party witnesses would be unwilling to travel. Accordingly, this factor does not weigh in favor of transfer." *Id.* at \*4.

*(7) Relative means of the parties:*  Aside from the conclusory statement in Ms. Cobb's Declaration that Defendant "cannot afford to conduct a litigation in New York," (Cobb Decl. ¶ 25), Defendant has not presented any evidence concerning its means.  Nevertheless, Defendant has engaged the multinational law firm of Troutman Sanders LLP as its counsel in this action, which suggests that Defendant has sufficient means to defend itself here.

*(8) Forum's familiarity with the governing law.*  "[C]ourts in the Second Circuit are as well versed in trademark law as any in the country." *Am. Eagle Outfitters, Inc. v. Tala Bros. Corp.*, 457 F. Supp. 2d 474, 479 (S.D.N.Y. 2006).  Moreover, where, as here, Plaintiff also has asserted claims under New York State law, "the 'forum's familiarity with governing law supports retention of the action.'"  *Id.* (citation omitted).  Accordingly, this factor weighs against transfer.

*(9) Trial efficiency and the interests of justice, based on the totality of circumstances.*  There is a strong presumption in favor of Plaintiff's choice of forum:  "To overcome the presumption in favor of [Plaintiff], [D]efendant must 'make a clear showing that the proposed transferee district is a more convenient one, and that the interests of justice would be better served by a trial there.'"  *Beatie & Osborn LLP*, 431 F. Supp. 2d 367, 395 (S.D.N.Y. 2006) (citation omitted).  Defendant has not met its heavy burden.  Accordingly, Plaintiff should be permitted to enforce its rights in New York, where it is suffering the harmful effects of Defendant's trademark infringement.

In essence, Defendant's request for a transfer reflects its belief that its home court of Louisiana would be "a more convenient and favorable forum."  (Donahue Decl. ¶ 4, Ex. A.) Forum shopping is not an appropriate basis for a transfer under Section 1404.

## CONCLUSION

The allegations of the Complaint and Plaintiff's declarations and exhibits in opposition to Defendant's motion are far more than is needed to establish a prima facie case for this Court's exercise of jurisdiction over the Defendant in New York. Accordingly, Defendant's Motion to Dismiss for Lack of Personal Jurisdiction should be denied. Moreover, because Defendant has failed to meet its heavy burden of proving that a transfer to another district is warranted, the Court should retain the case in New York, Plaintiff's chosen forum.

Dated:  New York, New York                          Respectfully submitted,
       April 2, 2008

                                       FROSS ZELNICK LEHRMAN &
                                       ZISSU, P.C.

           By:

                                        David Donahue (DD 5808)
                                        Nicholas Eisenman (NE 0213)

                                        866 United Nations Plaza
                                        New York, New York 10017
                                        (212) 813-5900

                                        Attorneys for Plaintiff